STEPHANIE ELIZABETH GREENBERG, BY AND THROUGH STEPHEN GREENBERG, HER FATHER AND NEXT FRIEND, APPELLANT, V. BISHOP CLARKSON MEMORIAL HOSPITAL, A CORPORATION, ET AL., APPELLEES.

266 N. W. 2d 902

Filed June 21, 1978. No. 41477.

Martin A. Cannon and Mary Veed of Matthews, Kelley, Cannon & Carpenter, for appellant.

John R. Douglas of Cassem, Tierney, Adams & Gotch, for appellee Bishop Clarkson Memorial Hospital.

Ronald H. Stave and David A. Johnson of Emil F. Sodoro Law Offices, for appellee Wax.

Heard before SPENCER, McCOWN, and BRODKEY, JJ., and REAGAN, District Judge, and KUNS, Retired District Judge.

McCOWN, J.

This is an action for medical malpractice. The action is brought by an infant, through her father and next friend, against the hospital where she was born and the doctor who attended her after birth, alleging that the malpractice of the defendants caused permanent blindness. After trial, the jury found for the defendants and judgment was entered on the verdict. Plaintiff has appealed.

The plaintiff, Stephanie Greenberg, was born approximately 3 months prematurely on May 15, 1972, at Bishop Clarkson Memorial Hospital in Omaha, Nebraska. At birth she weighed 1 pound 13 ounces. The defendant, Dr. James I. Wax, was not the attending physician at birth, but was called and came to the hospital and was in charge of her treatment thereafter.

The evidence established certain facts without dispute. The survival rate among premature infants weighing less than 2 pounds is very small. Premature babies as small as the plaintiff are quite commonly afflicted with respiratory problems generally classified as respiratory distress syndrome, and the administration of supplemental oxygen is necessary for preservation of life in many of these cases. The baby here had one form of respiratory distress prob-

lem. There were multiple occasions when the child's breathing stopped.

The medical evidence is also undisputed that another condition quite commonly develops among premature babies involving the growth of fiber tissue behind the lens of the eye. That condition is retrolental fibroplasia, and the baby here, by the time she was 4 months old, had retrolental fibroplasia in both eyes and she is permanently blind.

The medical testimony is in conflict as to when oxygen should be used, the amount and length of time for which it is necessary, the method by which oxygen levels in the baby's blood should be measured and tested, and the exact cause and effect relationship between the administration of high levels of oxygen for various periods of time and the occurrence of retrolental fibroplasia.

The testimony is also conflicting as to whether the methods and treatment used by the defendant doctor were or were not in accordance with those ordinarily and generally used under like circumstances by pediatricians engaged in his specialty in Omaha or similar communities.

The testimony of plaintiff's doctors was that the administration of oxygen was maintained at excessively high levels for too long a period of time; that high levels of oxygen were not proper as preventive measures against future respiratory distress syndrome, but only for treatment of actual attacks and for short periods of time; the absorption of oxygen into the blood was not properly monitored, measured, or tested; the tests actually made by the defendant doctor, if properly interpreted, would have dictated an immediate reduction in the level of oxygen; and the administration of oxygen at excessively high levels in the first few days of the baby's life was the direct and proximate cause of her blindness. Plaintiff's expert witnesses also testified that the methods used and the treatment given by the de-

fendant doctor were not in accordance with generally accepted standards of medical practice in Omaha or similar communities.

The testimony of the defendants' witnesses was that the administration of supplemental oxygen was essential to save the life of the baby; and that the amounts of oxygen administered, the methods of monitoring and testing oxygen levels in the blood, and the treatment given were all in accordance with the accepted standards of practice in the community. The defendants' evidence also disputed the plaintiff's evidence as to the cause and effect relationship between the administration of supplemental oxygen and retrolental fibroplasia. Defendants also introduced expert testimony that the baby here had a congenital defect, present at birth and unrelated to oxygen therapy, which was responsible for her blindness rather than the retrolental fibroplasia later found present.

At the close of the evidence the District Court overruled motions of all parties for directed verdicts, and the cause was submitted to the jury. The jury returned a 10 to 2 verdict in favor of the defendant hospital and the defendant doctor. Judgment was entered on the verdict and the plaintiff has appealed.

The plaintiff alleges that the District Court erred in refusing to allow plaintiff to amend her petition after the parties had rested, to allege that the defendant hospital was negligent in maintaining an inadequate number of nurses in the special nursery. Plaintiff's pleadings alleged 15 specific acts of negligence against the defendant hospital. Interrogatories were taken, and the case was tried on the basis of the specific acts of negligence alleged.

The case was tried over a period of almost 3 weeks and the parties rested on Friday, December 17, 1976. On December 20, 1976, plaintiff moved to amend her petition. The defendants objected on the ground

that it was the first time any allegation had been made that the nursing staff was inadequate in number, and that the defendants had not prepared nor offered any evidence on that issue. The District Court denied plaintiff's motion.

Section 25-852, R. R. S. 1943, provides that the court, in furtherance of justice, may amend any pleading, when the amendment does not change substantially the claim or defense, by conforming the pleadings or proceeding to the facts proved. Such an amendment may be made even after the evidence has been closed in an appropriate case. Swartz v. Peterson, 199 Neb. 171, 256 N. W. 2d 681.

The decision to allow or deny the proposed amendment rests in the sound discretion of the trial court. State Securities Co. v. Corkle, 191 Neb. 578, 216 N. W. 2d 879.

The defendants had no opportunity to defend against an allegation of inadequate staffing. In addition to that fact, the testimony failed to establish a standard as to the number of nurses required to staff a special nursery of the kind involved here. There is no evidence as to what other hospitals did with respect to the number of staff, nor any criteria for determining staffing numbers. The evidence failed to support the proposed amendment. The District Court properly exercised its discretion and concluded that the facts did not justify the amendment, and overruled plaintiff's motion.

The plaintiff next contends that the court erred in failing to instruct the jury as to each of the specific acts of negligence charged against the defendant hospital and the defendant doctor in plaintiff's pleadings and, instead, improperly summarized those allegations in instruction No. 2. In essence, plaintiff contends that the allegations of negligence pleaded should have been submitted to the jury as pleaded, and that the summarization was unfair.

This court answered a similar contention in Mar-

quardt v. Nehawka Farmers Coop. Co., 186 Neb. 494, 184 N. W. 2d 617. We said: "As we examine this record, the substance of this contention is that the trial court should have submitted to the jury the allegations of the plaintiff's petition in haec verba. This court has consistently condemned such a practice and has placed the duty upon the trial court to properly analyze, summarize, and submit the substance of the numerous allegations of negligence in tort petitions."

The allegations of negligence set out by the court in instruction No. 2 summarized the allegations of plaintiff's petition. Instruction No. 2 included allegations that the defendant doctor had ordered too high a concentration of oxygen for too long a period of time, and had failed to make timely and appropriate examinations and tests while the plaintiff was being administered a high level of oxygen. Instruction No. 2 properly analyzed and summarized plaintiff's allegations, and fairly presented them to the jury. There is no merit in plaintiff's contention as to instruction No. 2.

Plaintiff also contends that the trial court committed prejudicial error in instruction No. 14 by stating that the standard of care applicable to the defendant doctor was that ordinarily possessed by doctors "in the community or similar community where he practices." The contention is that the phrase "where he practices" was improperly placed and was, therefore, misleading and prejudicially erroneous.

The plaintiff is correct that the phrase is grammatically misplaced, but it is unrealistic to argue that the inadvertent error in that one instruction might have confused or misled the jury. The other instructions refer to medically acceptable standards "in this or a similar community" in six separate specific instructions, including separate instructions with respect to burden of proof, both as to hospitals

and doctors. Only instruction No. 14 contained the misplaced additional phrase. There is no indication in the record that the jury could have been confused or misled by the misplaced phrase. The meaning of an instruction and not its phraseology is the important consideration. Where the meaning of an instruction is reasonably clear, it is not prejudicially erroneous. An inadvertent grammatical error in an instruction is harmless error if it is clear from the instruction itself and the other instructions given that the jury was not confused or misled by the error. Leonhardt v. Harimon, 185 Neb. 224, 174 N. W. 2d 926. Instruction No. 14 was reasonably clear, and the grammatical error was harmless and not prejudicial.

Finally, plaintiff contends that instruction No. 16 was prejudicially erroneous. Instruction No. 16 was requested by the defendant, Dr. Wax. The complete instruction is: "The testimony of other physicians that they would have followed a different course of treatment than that followed by the defendant, Dr. James Wax, or a disagreement of doctors of equal skill and learning as to what the treatment should have been, does not establish negligence. It is not enough merely to present the testimony of a doctor who would have acted differently, or who is willing to express the opinion that treatment should have been performed differently."

Instruction No. 16 is taken directly from Kortus v. Jensen, 195 Neb. 261, 237 N. W. 2d 845. In the context of the Kortus case the statement of law was correct, but in the context of the present case it is inapplicable and misleading. In the Kortus case there was a directed verdict in favor of the defendant doctor which this court affirmed because the evidence failed to establish the generally accepted and recognized standard of medical care and skill in the particular community, and failed to show that the defendant doctor negligently departed from that stand-

ard, other than to show that his technique differed from that of plaintiff's doctor. The abstract statement of law was correct in the context of the Kortus case, but it is inaccurate, misleading, and erroneous as a jury instruction in this case. It is apparent that statements of law applicable in a case in which the evidence fails to establish a prima facie case for submission to a jury are ordinarily inappropriate as instructions in a case in which a prima facie case has been established and the issues are to be submitted to a jury. The statements of law contained in instruction No. 16 are not applicable where there is ample medical testimony as to the acceptable medical standard in the community, and are incomplete in any event.

The District Court had instructed the jury as to the duty of the defendants to use reasonable care and the standard of reasonable care in Omaha or similar communities, as well as instructing upon the burden of proof resting on the plaintiff. Those instructions were followed by instruction No. 16. The plaintiff's evidence of negligence was largely the testimony of doctors that they would have acted differently than the defendant doctor, or that the treatment by the defendant doctor should have been performed differently. Instruction No. 16, in practical effect, permitted the jury to infer that such testimony did not establish negligence and was not enough to establish the plaintiff's case. Instruction No. 16 was erroneous under the facts of this case. It was prejudicial to the plaintiff only as to her cause of action against the defendant doctor, however, and, by its own terms, did not apply to any negligence of the hospital.

The primary response to plaintiff's attack on instruction No. 16 is the contention that plaintiff cannot complain of that particular error because her motion for new trial failed to specify the number of the instruction but asserted, among other grounds,

that the court "erred severally in overruling each of plaintiff's objections to the instructions given." The defendants rely on a former rule that if a motion for new trial attacks instructions as a group, the assignment of error would not be considered if any one of the instructions in the group was properly given.

The record establishes that at the instruction conference the plaintiff objected extensively to the giving of instruction No. 16, and also presented a requested instruction, which was refused, which might have counterbalanced instruction No. 16. The motion for new trial was argued on two occasions and briefed. There is no contention that the issues included in the giving of instruction No. 16 were not presented and argued on the motion for new trial.

The rule relied on by defendants was discarded in Klause v. Nebraska State Board of Agriculture, 150 Neb. 466, 35 N. W. 2d 104. In that case we held that where a motion for a new trial assigned error to a group of instructions, it will be deemed to have assigned error separately as to each instruction contained within the specified group. While it would have been preferable to refer to the instructions more specifically in the motion for new trial, we believe the reference to the instructions to which plaintiff had objected at trial was a sufficient assignment of error under the facts of this case.

For the reasons stated, the judgment in favor of the defendant Bishop Clarkson Memorial Hospital was correct and is affirmed. The judgment as to the defendant James I. Wax is reversed and the cause is remanded for further proceedings.

AFFIRMED IN PART, AND IN
PART REVERSED AND REMANDED.